## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHAH M. MALIK,

                Plaintiff,

        vs.                                           Case No. 04-2074-KGS

AMINI'S BILLIARD & BAR STOOLS,
INC., d/b/a Amini's Galleria,

                Defendant.

_____

### MEMORANDUM & ORDER

This matter comes before the court upon defendant Amini's Billiard & Bar Stools, Inc.'s Motion for Summary Judgment (Doc. 50).

Plaintiff Shah M. Malik brought this suit for employment discrimination based on national origin/ethnicity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981. Plaintiff claims defendant discharged him on the basis of his Pakistani national origin. Plaintiff also claims that his discharge was in retaliation for plaintiff "supporting and calling management's attention to the race-based situation of an African-American employee who was being unequally treated and who suffered unequal employment consequences[.]"[1]

Defendant moves for summary judgment, arguing plaintiff has failed to prove a prima facie case as to both claims or, in the alternative, that plaintiff cannot prove defendant's proffered reason for his termination – seeking new employment by posting his resume on the

_____

[1]Plaintiff's Contentions, Pretrial Order (Doc. 34) at 8.

Internet – was pretextual.  Plaintiff filed his responsive brief (Doc. 67) to which Defendant replied (Doc. 75).  The issues are now ripe for disposition.

**I.      Summary Judgment Standard.**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2]  For purposes of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[3]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5]  To meet this standard, the moving party that does not bear the ultimate burden of persuasion at trial does not need to negate the claims of the non-movant; instead, the moving party can simply point out the absence of evidence for the non-moving party on an essential element of that party's claim.[6]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001), *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir., 1991).

[6] *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[7]

The non-moving party may not rest on mere allegations or denials in its pleading in opposition to

summary judgment, but "must set forth specific facts showing that there is a genuine issue for

trial."[8]  Therefore, the mere existence of some alleged factual dispute between the parties will

not defeat a properly supported motion for summary judgment.[9]  The court must consider the

record in the light most favorable to the non-moving party.[10]  However, in a response to a

motion for summary judgment, "a non-moving party cannot rely on ignorance of facts, on

speculation, or on suspicion, and may not escape summary judgment on the mere hope that

something will turn up at trial."[11]

On a motion for summary judgment, the "judge's function is not. . . to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."[12]  The standard for summary judgment mirrors the standard for directed verdict.  The

court must decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of

---

[7] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

[8] *Liberty Lobby*, 477 U.S. at 256.

[9] *Id.*

[10]  *See Doebele*, 157 F. Supp.2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

[11] *Zapata v. IBM, Inc.,* 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. September 29, 1998)(citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

[12] *Liberty Lobby,* 477 U.S. at 249.

law."[13]  "If the [c]ourt concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment."[14]

## II.     Facts

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to the non-moving party.  Immaterial facts and factual averments not properly supported by the record are omitted.  Further, where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion.[15]

### A.     The People and Parties

#### 1.     Shah Malik

Plaintiff Shah M. Malik ("Malik" or "plaintiff") was hired by defendant in 1995 as a full-time salesperson.  Plaintiff had very little direct sales experience before he began his employment at Amini's, so defendant provided him with initial and ongoing training, including how to approach and sell to customers, product information and marketing initiatives.  In 1999, defendant promoted plaintiff to a sales manager position and in 2001 defendant again promoted plaintiff to manage the entire Overland Park store.  Plaintiff earned approximately $21,000 in compensation during his first year of employment.  At the time of his termination in 2003, his earnings had grown to approximately $70,000 annually.  Plaintiff remained store manager until defendant terminated his employment on October 6, 2003.

---

[13] *Id*. at 251-52.

[14] *Anderson v. City of Cleveland*, 90 F. Supp. 2d 906, 907-08 (E.D. Tenn. 2000), *citing Anderson v. Liberty Lobby*, 477 U.S. at 251-52.

[15] D. Kan. R. 56.1(a).

### 2.    Amini's Galleria

Defendant Amini's Billiards & Bar Stools, Inc. ("defendant"), is the corporate entity that owns and operates Amini's Galleria in Overland Park, Kansas.  The store has been in operation since 1986.  Defendant is engaged in the business of selling home furnishings, such as pool tables, game tables, bar stools, and oriental rugs.

### 3.    Mack Amini

Mack Amini ("Mack") is the president and decision maker for defendant Amini's Billiards & Bar Stools, Inc., the corporate entity that does business as Amini's Galleria.  Mack was born in Iran and came to the United States in 1971.  Mack opened defendant's Overland Park, Kansas store in 1986 and exercises control over all aspects of that store.   Since 1986, Mack has expanded defendant's business to include corporate entities and stores in Kansas and Missouri. It was Mack who made the decision to terminate plaintiff's employment.

### 4.    Arash Amini

Arash Amini ("Arash") is the son of Mack Amini.  From 2000 through the date of plaintiff's termination on October 6, 2003, Arash was the vice president of operations of the Overland Park Amini's store and was plaintiff's direct supervisor during this time.

### 5.    Elmo Garlington

Elmo Garlington is a former employee of the defendant and worked in defendant's service department from April 8, 2003 to January 16, 2004.  Defendant suspended Mr. Garlington from work on October 2, 2003 for drinking alcohol while on the job, a violation of defendant's company rules ("The Garlington Incident").  Mr. Garlington is African-American.  It is plaintiff's comment regarding the defendant's discipline of Mr. Garlington on October 2, 2003

that plaintiff contends was the basis for firing the plaintiff – not plaintiff's seeking other employment.

### 6.   Ray Moazzen

Ray Moazzen, a Persian employee, was a delivery person at Amini's Galleria in Overland Park in 2003.  Mr. Moazzen accompanied Mr. Garlington on the October 2, 2003 delivery that resulted in Garlington's discipline for drinking on the job.

### 7.   Bob Holman and Lee Oxford

Robert "Bob" Holman was the operations manager of defendant Amini's Galleria in 2003.  Lee Oxford was defendant's service manager in 2003 and directly supervised Mr. Garlington and Mr. Moazzen.  Mr. Holman and Mr. Oxford are responsible for initiating the discipline of Mr. Garlington for drinking on the job on October 2, 2003.

### B.   The Garlington Incident

On October 2, 2003, Mr. Garlington and Mr. Moazzen were making deliveries for defendant.  While on one of the deliveries, Mr. Garlington admits that he and Mr. Moazzen drank a beer.  When the two men returned to defendant's store after making their deliveries, Mr. Holman observed Mr. Garlington throwing a beer can into the trash.  After Mr. Holman consulted with Mr. Oxford, the two agreed that Mr. Garlington should be disciplined for drinking on the job, a violation of defendant's work rules.  Mr. Garlington was then written up and suspended from work for three days for the violation. At the time Mr. Garlington was written up and suspended, plaintiff contends that he stated to Mr. Holman, "If that's the case you can bring Ray in the office, and Ray should be fired."  Mr. Moazzen was never written up or disciplined for this incident.

### C.      Plaintiff's Termination

Defendant terminated plaintiff's employment on October 6, 2003.  On that day, Arash

Amini explained to plaintiff that he was being terminated because defendant's president, Mack

Amini, found plaintiff's resume on the Internet employment website, Monster.com, and

determined that it was not in defendant's best interest to continue to entrust the management,

supervision and overall responsibility of its store to an individual who was looking for other

employment opportunities.  In addition to producing a copy plaintiff's resume, Arash had a note

from Mack, dated September 25, 2003, informing Arash that Mack had discovered plaintiff's

resume on Monster.com, that the resume misrepresented plaintiff's achievements at Amini's, and

that Mack wanted Arash to terminate plaintiff "on Monday."  However, no action to terminate

plaintiff was taken between September 25, 2003, and October 5, 2003.

## III.    Discussion

### A.    Plaintiff's national origin employment discrimination claim under Title VII and Section 1981.

Plaintiff first claims defendant discharged him on the basis of his Pakistani national

origin.  In a case such as this, a plaintiff may prove discrimination by providing direct evidence

or indirect circumstantial evidence.[16]  If, as here, a plaintiff uses indirect evidence to prove

discrimination, he must "allege and produce evidence to support specific facts that are sufficient

to support a reasonable inference that but for plaintiff's status the challenged decision would not

---

[16]*See, e.g., Ramsey v. City and County of Denver,* 907 F.2d 1004, 1008 (10th Cir. 1990)(noting that direct evidence of discrimination comes in the form of an oral or written statement in which defendant admits that the reason for its employment decision is due to a protected characteristic of plaintiff).

have occurred."[17]  Further, if the plaintiff uses indirect evidence to prove unlawful discrimination, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973).  This framework is appropriate for analyzing Section 1981 claims as well as those based upon Title VII.[18]

Under *McDonnell Douglas*, to survive summary judgment, plaintiff must raise a genuine issue of material fact on the elements of his prima facie case of discrimination.[19]  The burden to produce evidence then shifts to defendant to articulate a legitimate, nondiscriminatory reason or reasons for the challenged employment action.  If defendant makes such a showing, the burden reverts back to plaintiff to set forth facts that raise a genuine issue of material fact that defendant's proffered reasons are pretextual and thus unworthy of belief.[20]  If plaintiff can produce such evidence, the motion for summary judgment should be denied.[21]

1.    **Prima Facie Case.**

Plaintiff first claims defendant discriminated against him on the basis of his Pakistani national origin.  Upon reviewing the Tenth Circuit case law, the court finds that the parties' articulation of the elements plaintiff's prima facie case[22] does not accurately reflect the current

---

[17] *See Notari v. Denver Water Dep't*, 971 F.2d 585, at 590 (10th Cir. 1992).

[18] *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

[19] *Randle v. City of Aurora*, 69 F.3d 441,451 (10th Cir. 1995).

[20] *Id.*

[21] *Id.*

[22] Defendant, in its motion for summary judgment, contends that Plaintiff must prove (1) he was a member of a protected class; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated non-minority

law and framework for analyzing this type of action.[23]

Rather, the court finds that the Tenth Circuit has determined that a plaintiff alleging race discrimination may establish a prima facie case by proving that:  (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for his position; (3) plaintiff was discharged despite his qualifications; and (4) the position was not eliminated after plaintiff's discharge.[24]  The court shall fully analyze these elements under the current framework in the Tenth Circuit without the aid of additional briefing.

### a.    Whether plaintiff belongs to a protected class.

The court notes that it is undisputed that plaintiff is a Pakistani male.  Under these circumstances, the court concludes that plaintiff belongs to a protected class.

### b.    Whether plaintiff was qualified for his position.

It is undisputed that plaintiff was hired by defendant in 1995 as a full-time salesperson. It is also undisputed that plaintiff had very little direct sales experience before he began his employment at Amini's, so defendant provided him with initial and ongoing training, including how to approach and sell to customers, product information and marketing initiatives.  Further, it is undisputed that in 1999, defendant promoted plaintiff to a sales manager position and in 2001

---

employees were treated differently.  Defendant's Memorandum in Support of it Motion for Summary Judgment (Doc. 51) at 16 (citing *McAlester v. United Air Lines*, 851 F.2d 1249, 1260 (10th Cir. 1988); and *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)); Plaintiff, in his Response, does not dispute these four elements.  *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Summary Judgment (Doc. 67) at 30.

[23]*See Kendrick v. Penske Transportation Servs Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)(noting the fact that similarly situated nonminority employees were treated differently is not a prima facie element of a §1981 claim).

[24] *Baca v. Skylar et al.,* 398 F.3d 1210, 1216 (10th Cir. 2005)(citing *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999)).

defendant again promoted plaintiff to manage the entire Overland Park store.  Finally, the court notes it is undisputed that at the time of his termination in 2003, plaintiff's earnings had grown to approximately $70,000 annually.  Due to plaintiff's extensive and undisputed work history with defendant, and the fact that plaintiff remained store manager from 2001 until defendant terminated his employment on October 6, 2003, the court concludes plaintiff was qualified for his position.

   c.   **Whether plaintiff was discharged despite his qualifications.**

Plaintiff had an extensive work history with defendant.  He was store manager and qualified for this position when defendant terminated his employment.  Furthermore, defendant contends it fired plaintiff due to Mack Amini's discovery of plaintiff's resume on the Internet website Monster.com and Mr. Amini's determination that it was not in the defendant's best interests to retain an employee who was actively seeking other employment.  Under these circumstances, the court finds that plaintiff was discharged despite his qualifications and the third element is met on this claim.

   d.   **Whether the position was eliminated after plaintiff's discharge.**

To satisfy the fourth and final element of plaintiff's prima facie claim, plaintiff must demonstrate that his position was not eliminated after discharge.[25]  Because the parties failed to identify the proper prima facie elements for this claim, the court does not have full briefing on this element.  Nonetheless, the court notes that the Tenth Circuit has determined that "the test for position elimination is not whether the responsibilities were still performed, but rather whether

---

[25]*Baca v. Skylar et al.*, 398 F.3d 1210, 1216 (10th Cir. 2005)(citing *Perry v. Woodward,* 199 F.3d 1126, 1138 (10th Cir. 1999).

the responsibilities still constituted a single, distinct, position."[26]

However, "the fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios."[27]  For example, because defendant claims that the reason for plaintiff's termination was his alleged misconduct for posting his resume on the Internet and not that his position was eliminated, plaintiff need only demonstrate that "h[is] termination occurred 'under circumstances which give rise to an inference of discrimination.'"[28]  In fact, "where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant."[29]

While the parties have not briefed this element, a plaintiff's burden of establishing a prima facie case is not onerous.[30]   In fact, courts have described a plaintiff's prima facie burden

---

[26] *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996); *see also McMahen v. Gaffey, Inc.*, 52 Fed. Appx. 90, 92 (10th Cir. 2002)(quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)("'spreading the former duties of a terminated employee among remaining employees does not constitute replacement.'").

[27] *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)(citing *Hysten v. Burlington Northern & Sante Fe Railway Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)(while "*McDonnell Douglas* defines the prima facie elements for the archetypal discrimination case" the facts of a given case dictate the measure by which the *McDonnell Douglas* and corresponding *Kendrick* tests should be applied)).

[28] *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)(quoting *Kendrick*, 220 F.3d at 1227).

[29] *Id.* at 1100.

[30] *Id.* at 1099 (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).

as *de minimis.*[31]   Courts have enumerated a variety of circumstances that can give rise to an

inference of discriminatory motive, including:

> actions or remarks made by decisionmakers that could be viewed as reflecting a
> discriminatory animus..., preferential treatment given to employees outside the
> protected class..., in a corporate downsizing, the systematic transfer of a
> discharged employee's duties to other employees..., or a pattern of recommending
> the plaintiff for positions for which [he] is not qualified [or over-qualified] and
> failure to surface plaintiff's name for positions for which [he] is well-qualified.  A
> plaintiff might also rely upon the fact that defendant, following plaintiff's
> termination, continued to seek applicants to fill the position,...or, more generally,
> upon the time or sequence of events leading to plaintiff's termination.[32]

In this case, plaintiff is a male of Pakistani origin – a protected minority group.  The

court notes at the time of his termination, plaintiff had an exemplary work history with

defendant, as plaintiff was steadily promoted to store manager over the course of six years, even

though he began his employment with defendant having no direct sales experience.  Finally,

there is no evidence to suggest that prior to his termination, plaintiff had performed poorly in his

role of store manager of defendant's Overland Park store.

Under these circumstances, plaintiff's status as an individual within a protected minority

group and his exemplary work history and job performance up to his termination lead the court

to conclude that plaintiff's termination occurred under circumstances that give rise to an

inference of discrimination.  Therefore, plaintiff has satisfied his burden of establishing a prima

facie claim.  Accordingly, the burden shifts to defendant to proffer a legitimate,

---

[31]*Id.* at 1101 ("To satisfy her *de minimis* prima facie burden, Dr. Plotke only needed to
demonstrate that her termination occurred 'under circumstances which give rise to an inference
of discrimination.'")(citations omitted).

[32]*Id.* at 1100 (quoting *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 91 (2d Cir.
1996)).

nondiscriminatory reason for plaintiff's termination.

### 2.    Facially Nondiscriminatory Justification for Defendant's Actions.

Under *McDonnell Douglas*, defendant must now provide evidence of a legitimate, nondiscriminatory reason for its conduct.[33]  This means that it is the defendant's burden to establish facts from which the court may infer a proper reason behind defendant's decision to terminate plaintiff's employment.  Defendant does not need to litigate the merits of its reasoning to prove that its reason was bona fide, or prove that its reasoning was applied in a nondiscriminatory fashion.[34]  However, the defendant's reason for terminating plaintiff must be reasonably specific and clear.[35]

Defendant contends it discharged the plaintiff due to Mack Amini's discovery of plaintiff's resume on Monster.com and its decision to terminate plaintiff was based upon Mack Amini's conclusion that plaintiff was actively seeking other employment while continuing to work for defendant and this activity was not in the best interests of the defendant corporation. Additionally, Arash informed plaintiff at the time he was terminated that he was being terminated for posting his resume on the Internet and had a handwritten note from Mack to that effect.  Therefore, the court finds that defendant has met its burden under *McDonnell Douglas*  to show a legitimate, nondiscriminatory reason behind its decision to terminate plaintiff.

### 3.    Pretext.

The court will now consider whether plaintiff has met his burden under *McDonnell*

---

[33]*McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

[34]*Richardson v. Topeka Metro. Transit Authority*, 987 F. Supp. 887, 890 (D. Kan. 1997)(citing *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir. 1992)).

[35]*Id.*

*Douglas* to put forth sufficient evidence to show that defendant's proffered reasons for his termination are pretextual and thus unworthy of belief.  If plaintiff can provide such evidence, the motion for summary judgment should be denied.

To establish pretext, plaintiff must show either that "a discriminatory reason more likely motivated the employer...or that the employer's proffered explanation is unworthy of credence."[36]  "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence."[37]

In response to defendant's proffered legitimate, nondiscriminatory reason for discharging plaintiff (i.e. because plaintiff posted his resume on the Internet and was actively seeking other employment), plaintiff's sole argument as to pretext is that plaintiff believes other employees posted their resumes on the Internet and were not fired.  Plaintiff claims that Mack and Arash Amini were aware of these other employees posting their resumes on the Internet.  However, other than asserting his belief, plaintiff does not submit any specific evidence on this issue, such as the actual resumes of other employees of the defendant who posted their resumes on the Internet and were not fired, or affidavits of others to this effect.  Plaintiff's testimony on this issue is unhelpful because it is not based on personal knowledge.  Finally, plaintiff fails to elaborate on the nature of the positions held by those employees who he *believes* were involved in these alleged activities.

---

[36]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001).

[37] *Chavez v. Thomas & Betts Corporation*, 396 F. 3d 1088, 1104 (10th Cir. 2005), citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

The only potential evidence the court can glean from plaintiff's scant briefing on this issue is plaintiff's deposition testimony to the effect that because a co-worker had a second job, plaintiff concluded that the co-worker must have had his resume posted on the Internet.[38]

Without more, the court cannot conclude that defendant's legitimate nondiscriminatory reason for plaintiff's discharge is pretextual. Even in viewing the evidence in a light most favorable to plaintiff, the court finds that plaintiff has failed to carry his burden under *McDonnell Douglas* to demonstrate a genuine issue for trial on this claim. A plaintiff's mere conjecture that an employer's reason is pretextual is an insufficient basis for denial of summary judgment.[39] Rather, the court finds that the sole evidence plaintiff raises as to pretext is his own deposition testimony that he believes that other employees posted their resumes on the Internet and were not fired – testimony that does not even identify the job titles or positions of other employees in relation to plaintiff so as to address whether these employees were even similarly situated to plaintiff.[40] Without more, the court is constrained to find that plaintiff's evidence fails to raise a genuine issue on this claim. Therefore, the court shall grant summary judgment in favor of defendant as to this claim.

## B.      Plaintiff's retaliation claim.

In his second claim, plaintiff contends that his discharge was in retaliation for plaintiff

---

[38]Deposition of Plaintiff Shah Malik, Exhibit 2 to Defendant's Motion for Summary Judgment (Doc. 51) at 28 ("I mean, he has had another job, okay, so – so I believe that he has put his resume [on the Internet]. I don't have direct proof of it, but I believe [it].").

[39]*See, e.g., Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

[40]Deposition of Plaintiff Shah Malik, Exhibit 2 to Defendant's Motion for Summary Judgment (Doc. 51) at 28 ("I mean, he has had another job, okay, so – so I believe that he has put his resume [on the internet]. I don't have direct proof of it, but I believe [it].").

"supporting and calling management's attention to the race-based situation of an African-American employee who was being unequally treated and who suffered unequal employment consequences[.]"[41] The court shall apply the burden-shifting framework set forth in *McDonnell Douglas* to analyze this claim.[42]

### 1.   Prima Facie Case.

In order to make a prima facie case of retaliation, plaintiff must prove (1) he engaged in protected opposition to discrimination; (2) defendant took adverse employment action against him; and (3) a causal connection between the protected opposition and the adverse action.[43] Defendant does not dispute the second element for purposes of this motion.  However, defendant contends that plaintiff has not established the first and third elements of this claim.  The court will discuss these two elements below in reverse order.

### a.   Causal connection between the protected activity and the adverse action.

Defendant contends that plaintiff has failed to demonstrate a causal connection between the alleged protected activity and the adverse employment action.  A plaintiff can generally establish a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[44]  However,

---

[41]Plaintiff's Contentions, Pretial Order (Doc. 34) at 8.

[42]*See Robinson v. Vinke et al.,* 35 Fed. Appx. 734, 736 (10th Cir. 2002)(analyzing both Title VII and Section 1981 retaliation claims under the burden-shifting framework announced in *McDonnell Douglas Corp.*).

[43] *McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999) (citing *Griffith v. Colorado*, 17 F.3d 1323 (10th Cir. 1994)); *Cole*, 43 F.3d at 1381.

[44]*Ledbetter v. City of Topeka*, 2002 U.S. Dist. LEXIS 1957 *25 (D. Kan. February 1, 2002)(quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (D. Kan. 1982)(internal

defendant contends that its decisionmaker must be actually aware of plaintiff's alleged protected activity to establish a causal connection citing *Goldsmith v. City of Atmore*[45] – an Eleventh Circuit case – for this proposition. In citing to *Goldsmith*, defendant argues that, "Malik is unable to prove [a causal connection] because he cannot establish that the person who terminated him, Mack Amini, was actually aware of Malik's alleged protected expression at the time he ordered Amini's termination."[46]

The court disagrees that direct evidence of actual knowledge of protected activity is absolutely necessary to establish a causal connection. In fact, the court in *Goldsmith* held that a defendant's awareness or knowledge of the protected activity may be established by indirect or circumstantial evidence.[47] Moreover, the Tenth Circuit has held that a causal connection may be inferred where a plaintiff is able to show a close proximity in time between the alleged retaliatory acts and the protected conduct.[48]

With this in mind, the court finds that plaintiff has raised a genuine issue as to this element. Plaintiff contends he made the alleged protected statement to Mr. Holman regarding the discipline of Mr. Garlington on October 2, 2003. Plaintiff was terminated the following Monday, on October 6. The court finds that the timing in this instance raises an inference of

---

quotations omitted)).

[45] 996 F.2d 1155, 1163 (11th Cir. 1993).

[46]Defendant's Memorandum in Support of Motion for Summary Judgment (Doc. 51) at 20.

[47] *Goldsmith*, 996 F.2d at 1163. ("The defendant's awareness of the protected statement, however, may be established by circumstantial evidence.") (citations omitted).

[48]*Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 550 (10th Cir. 1999).

knowledge on the part of defendant sufficient to raise a genuine issue as to a causal connection.[49]

Therefore, plaintiff has demonstrated a triable issue as to this element.

**b.**          **Protected Opposition to Discrimination**

As to this element, plaintiff must establish that he engaged in protected opposition to discrimination.  As defendant correctly points out, a plaintiff generally need not file a written complaint to qualify as protected opposing activity; however, a plaintiff's verbal remarks must sufficiently convey concerns about the unlawfulness of an employer's conduct.[50]  Further, a plaintiff's alleged protected activity generally must oppose illegal discrimination to management and/or supervisory officials and must not merely take the form of personal complaints or grievances.[51]

"While some courts have indicated that vague references to unspecified discrimination are not protected, no clear rule has emerged as to the level of specificity required."[52] Nonetheless, the court notes that while employees often do not speak with the precision of lawyers, employers need not approach every employee's comment as a riddle, troubling over the possibility that it contains a veiled complaint of discrimination.[53]  The relevant question is

---

[49] *See Id.*(holding that closeness in time between the alleged retaliatory acts and the protected conduct raises a genuine issue as to a causal connection).

[50]*Garcia-Paz v. Swift Textiles, Inc.,* 873 F. Supp 547, 560 (D. Kan. 1995).

[51]*Wirtz v. Kansas Farm Bureau Services, Inc.,* 274 F. Supp. 2d 1198, 1212 (D. Kan. 2003)(citing *Garcia-Paz*, 873 F. Supp. at 560).

[52]*Garcia-Paz*, 873 F. Supp. at 560 (comparing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)(allegation of "ethnocism" insufficient) with *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1567-70 (2nd Cir. 1989)(mock memo listing age and gender qualifications for certain position permitted finding of opposition)).

[53]*Id.* at 560.

-18-

"whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."[54]

With this framework in mind, the court finds that plaintiff's remarks in this case do not sufficiently convey any concerns about the possible unlawfulness of defendant's conduct under Title VII or §1981. First, plaintiff made the statement he alleges is protected activity to Robert Holman, a *subordinate* employee. Second, while plaintiff may have believed an improper motive might be at work, a jury on this record could not logically infer that when plaintiff made the sole comment to his operations manager and subordinate, Robert Holman, " "[I]f that's the case [suspending Garlington], you can bring Ray [Moazzen] in the office, and Ray should be fired," plaintiff was engaging in protected opposition to an unlawful practice.

Plaintiff, as store manager, retained ultimate control over whether Mr. Moazzen should be disciplined along with Mr. Garlington. Indeed, the record does not support a reasonable inference that defendant engaged in unlawful activity in disciplining Mr. Garlington or in not disciplining Mr. Moazzen. There is nothing in the record to indicate that plaintiff – as store manager of the Overland Park store – could not have disciplined Ray Moazzen if an investigation showed Mr. Moazzen to have been drinking. But plaintiff did not investigate this incident and rather turned the investigation over to Mr. Holman.

Thus, as a matter of law, the court finds that plaintiff's conduct did not constitute protected opposition and plaintiff has failed to establish this element of his retaliation claim.

IV.     Conclusion

---

[54]*Id.*

After a thorough review of the record and the parties' briefings, the court fails to find an essential genuine issue of material fact on elements of plaintiff's claims as discussed above and shall grant defendant's Motion for Summary Judgment (Doc. 50).  Accordingly,

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 50) is hereby granted.  Judgment shall be entered in favor of defendant in accordance with this order.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2006, at Topeka, Kansas.

<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge

-20-